## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

**WILLIAM BLANKENSHIP, JR.**                                      **PLAINTIFF**

**V.**                                 **2:08-cv-2074 (JLH)**

**USA TRUCK, INC.**                                              **DEFENDANT**

## USA TRUCK, INC.'S BRIEF IN
## <u>SUPPORT OF MOTION TO DISMISS</u>

### I.      LAW & ARGUMENT

William Blankenship, Jr.'s complaint is barred as a matter of law.  So this

Court should dismiss it with prejudice.  Long before Blankenship filed his

complaint he wholly released USA Truck from all potential liability related to

any claim that could arise from his business dealings with USA Truck.  <u>Exhibit

A</u>.  This Court should hold Blankenship to his agreement that he and USA Truck

had conclusively settled all claims that might arise out of the very facts that

Blankenship now thinks are actionable.  The claims Blankenship has filed are not

actionable based on the law of release, accord and satisfaction, and waiver.

***The unambiguous release decides this case for USA Truck.***  USA Truck and

Blankenship's precise, plainly worded, and far-sweeping release bars all claims

that Blankenship has filed (or ever might file) against USA Truck regarding,

among other things, commissions allegedly owed to Blankenship for freight USA

Truck allegedly hauled on the particular accounts mentioned in his complaint and its incorporated exhibits.  (Of course, Blankenship is also protected from claims USA Truck could assert against him.)

The release is razor sharp on many points, including that Blankenship had ample opportunity to obtain legal counsel concerning the release; that he was fully aware of his alleged damages and losses when he signed the release; that he released all rights to assert known and unknown financial loss; and that Blankenship was not induced to sign the release based on any statement or representation concerning Blankenship's alleged damages or losses (known or unknown) related to commissions owed to him when he executed the release. Exhibit A at 1.  Simply put, Blankenship wholly compromised any and all claims against USA Truck.  And he did so regarding the same subject that he now complains about.

No boilerplate language is at work here.  Instead, the release was tailored to the Blankenship/USA Truck dispute.  The release therefore strikes right at the jugular vein of Blankenship's complaint, as Justice Holmes would say.  This Court should dismiss the complaint with prejudice because it is the just and fair thing to do.  Here is the clarion language of the Blankenship/ USA Truck release,

> That the undersigned, namely William Blankenship, Jr., for and in consideration of EIGHTY-FIVE THOUSAND DOLLARS AND NO/100 ($85,000.00) and other good and valuable consideration, the receipt and sufficiency of

2

which is hereby acknowledged, does hereby release, acquit, forever discharge, and covenant to hold harmless USA TRUCK, INC., its affiliates, officers, directors, employees . . . of and from any and all claims, actions, causes of action . . . damages, costs, losses, commissions, expenses and compensation whatsoever which I now have or which may hereafter accrue . . . in any way relating to and/or arising out of any and all known financial, economic . . . damages or losses, and the consequences thereof, resulting or to result from that certain Agent Agreement . . . dated June 19, 2001 . . . and all subsequent amendments thereto . . . as well as any and all other agreements between USA TRUCK, INC. and William Blankenship, Jr. . . . .

\*   \*   \*

The undersigned . . . does hereby specifically release USA TRUCK, INC. from the eighteen (18) month "lease period" provision referenced in the Agent Agreement . . . as of the date of this Release and Settlement Agreement is signed and USA TRUCK, INC. shall have no further liability or responsibility related thereto.

\*   \*   \*

It is understood and agreed that this is a settlement and compromise of doubtful and disputed claims . . . [and] that no promise of inducement has been offered except as herein been set forth; that no statement or representation by or on behalf of any person, entity or party hereby released . . . concerning the nature and extent of any losses, commissions or damages, or legal liability therefore, has been made or considered by the undersigned in executing this Release[.]

The undersigned represents, warrants and acknowledges that he has carefully read the . . . foregoing Release and Settlement Agreement, has had the opportunity to obtain legal interpretation, opinion and explanation regarding

3

the significance and fact of its content, and fully understands the meaning and gravity thereof. The undersigned, being aware of his alleged damages, losses and associated expenses, states that it is his desire to accept this compromise and to fully and completely release USA TRUCK, INC.

\*   \*   \*

THE UNDERSIGNED DOES HEREBY ACKNOWLEDGE THAT HE . . . HAS CAREFULLY READ AND UNDERSTANDS THIS INSTRUMENT, AND THAT HE FULLY REALIZES THAT IT CONSTITUTES A FINAL AND COMPLETE RELEASE OF ANY AND ALL CLAIMS WHICH HE HAS OR MAY HAVE . . . ARISING OUT OF THE ABOVE-DESCRIBED AGENT AGREEMENT[.]

\*   \*   \*

**THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO AND THE TERMS OF THIS RELEASE ARE CONTRACTED AND NOT A MERE RECITAL. IT IS CLEARLY UNDERSTOOD THAT THIS IS A FULL AND FINAL RELEASE.**

Blankenship signed the release on 6 March 2006, before a notary public in Texas. He at that time freely contracted away every claim that he arguably had, or ever might have, against USA Truck. And the release pointedly states that Blankenship agreed that he did not consider any "statement or representation [by USA Truck] . . . concerning . . . commissions or damages, or legal liability therefore" when he executed the release. That Blankenship now believes he "should have held out for more" money and is trying to get more now is "not a

4

legitimate basis to set aside an otherwise valid release." *Wright v. Eastman Kodak, Co.*, 445 F.Supp. 2d 314, 317-18 (W.D.N.Y. 2006) (collecting cases).  The truth is self evident.

Yes, under Arkansas law an alleged fraud committed for the purpose of inducing the other party to sign the release generally voids a release.  *Wilson v. Sw. Cas. Ins. Co.*, 228 Ark. 59, 62-63, 305 S.W.2d 677, 679-80 (1957).  It is no secret that this is why Blankenship has pled such a claim—it's his only hope to renege on his two-year-old decision to accept $85,000.00 to settle his commission dispute with USA Truck.  Here, however, the general rule that Blankenship relies on succumbs to a prudent and pointed exception that courts all over America have recognized and applied.  More specifically, Blankenship's fraudulent-inducement claim is neutralized because, among other reasons, he long ago agreed that he was not relying on any representation about the volume of freight that USA Truck carried on certain accounts, which USA Truck had allegedly made before Blankenship signed the release.  So this Court can fairly carry out the contract's plain and simple words and thereby advance Arkansas's public-policy goal of favoring settlement.  *Douglas v. Adams Trucking Co.*, 345 Ark. 203, 211, 46 S.W.3d 512, 517 (2001).  Indeed, given the parties' arms-length business relationship, and the release's transparent terms—including that Blankenship had time to consider the release; seek a legal opinion about it; that he understood its

5

meaning, scope, and legal effect; the merger clause; and the specific disclaimer—this Court can comfortably dismiss the complaint on a 12(b)(6) motion.  This is true even as this Court presumes the truth of the complaint's allegations.  *Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002) (Rule 12(b)(6) standard).

Frankly put, Blankenship's hope cannot defeat the governing law.  Nor can he dissolve his own binding promise to wholly and unequivocally release USA Truck.

***Arkansas release law bars Blankenship's complaint.***  In this diversity case this Court applies Arkansas law.  *See Ford v. GALS, Inc.*, 265 F.3d 670, 679 (8th Cir. 2001) (r'hg denied).  In Arkansas, a release is a contract between Blankenship and USA Truck that must be respected and interpreted using the usual rules of contract interpretation.  *Green v. Owens*, 254 Ark. 574, 579, 495 S.W.2d 166, 169 (1973).  A release is not only a form of contract, but a "jural act of high significance that makes it possible for parties to resolve disputes and potential disputes."  66 AM. JUR. 2D RELEASE § 2 (2005).  As stated earlier, one bookend to USA Truck's argument for dismissal is that Arkansas law strongly favors settlements.  *Douglas*, 345 Ark. at 211, 46 S.W.3d at 517.  Consequently, when confronted with a choice to make, this Court should uphold Blankenship's express acceptance of a settlement resulting from direct negotiations with USA

Truck—a settlement that indisputably compromised and extinguished the exact allegations that Blankenship's complaint has raised years after the compromise was consummated.

Here is a recent statement of Arkansas law regarding contract interpretation:

> The first rule of interpretation of a contract is to give the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006) (quotation and citations omitted). In sum, the chief rule of contract interpretation is that "whenever parties to a contract express their intention in clear and unambiguous language in a written instrument, it is [this] Court's duty to construe the writing in accordance with the plain meaning of the language employed." *Green v. Ferguson*, 263 Ark. 601, 605, 567 S.W.2d 89, 91 (1978). When this Court marries Arkansas law to Blankenship's complaint, in light of the entire release, only one conclusion is reasonable: the complaint is barred as a matter of law.

The Arkansas Supreme Court long ago recognized that "no sounder policy" exists than respecting parties' rights to contract in their own business affairs. *McMillan v. Palmer*, 198 Ark. 805, 810, 131 S.W.2d 943, 946 (1939). Another pillar of Arkansas law is that all parties are "presumed to have read and understood their contract." *Williams v. Johnson Custom Homes*, 100 Ark. App. 60, __, __ S.W.3d __ (2007). That presumption has no work to do here, however, because Blankenship himself admits, in writing, that he carefully read and understood the release's content and meaning and the legal "gravity thereof." Exhibit A at 1. Blankenship will likely try to muck the matter up by arguing he didn't understand the terms to mean this or that. But as the Arkansas Supreme Court noted in *Alexander v. McEwen*, whether a contract is ambiguous is determined by an objective standard. "The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it[.]" 367 Ark. at 244, 239 S.W.3d at 522. The release in this case is as clear as they can reasonably come. Tortuous readings, this Court knows, are not allowed. Yet Blankenship may well ask this Court to make such a reading.

Here's the bottom line: Blankenship has chosen not to respect his binding promise. But this Court can and should order, at the outset, that Blankenship's release bars all claims against USA Truck.

*Arkansas law on fraudulent inducement.*  Blankenship's talk in his complaint about fraudulent inducement is legally ineffective.  He cannot be permitted to rewrite a binding history that he helped write in the first place.  He made a decision, and now must live with its consequences.  Stated in this case's terms, fraudulent inducement has five elements:

> ➢ USA Truck made a false representation of material fact concerning the contract
>
> ➢ USA Truck knew that the representation was false when it was made
>
> ➢ USA Truck made the alleged representation for the purpose of inducing Blankenship to make the contract
>
> ➢ Blankenship justifiably relied on the alleged representation
>
> ➢ Blankenship would not have made the contract but for the alleged false representation

ARKANSAS MODEL JURY INSTRUCTIONS (CIVIL) 2433 (2008 ed.).  Blankenship cannot meet these elements as a matter of law.

The Arkansas Supreme Court has recently discussed the intersection of fraud and release law.  Regarding fraudulent inducement, the Supreme Court in *Wal-Mart Stores, Inc. v. Coughlin* wrote this,

> Fraud cannot be an agreement.  It is an imposture practiced by one upon another.  It may not be used as an inducement to enter into an agreement.  Defendant does not claim that he entered into an agreement that affects the validity of the contract, but that he was induced by false representations to enter into the

> contract.  If that be true the validity of the contract is not
> assailed, but its very existence is destroyed.    To
> constitute fraud by false representation there must be a
> representation of alleged existing fact; that
> representation must be false in fact; it must be made
> with intent to deceive, and the person to whom it is
> made must believe it.

369 Ark. 365, 375-76, 255 S.W.3d 424, 432 (2007) (quotation and citation omitted).

USA Truck acknowledges the general rule that fraud can void a contract.

Blankenship may argue that *Coughlin* supports his argument that the

(unequivocal and plain) release is ineffective given his fraudulent-inducement

allegations.  Again, Blankenship will do so only because the tactic is all he has to

save himself from his prior agreement.  But if pursued the tactic fails for good

reasons; *Coughlin* does not and cannot decide this motion against USA Truck.  If

anything, *Coughlin* helps seat USA Truck's point that the release in this case must

be given full legal effect.

    *Coughlin* is inapposite for two key reasons.  First, a corporate fiduciary was

the alleged defrauding party, but no such relationship exists in this case.  Here

there was at all times an arms-length transaction between an independent

salesman (Blankenship) and USA Truck.  There was no fiduciary relationship

and none has been alleged.  Second, the issues in *Coughlin* did not involve a very

specific "no reliance on any representation" provision that USA Truck's release

specifically included.  The Arkansas Supreme Court mentioned no such

provision in *Coughlin*, and none was at issue.  Furthermore, the Arkansas Supreme Court has relied previously on a disclaimer-of-reliance provision in a contract in holding that there was no triable issue on an implied warranty given the disclaimer.  *O'Mara v. Dykema*, 328 Ark. 310, 319-20, 942 S.W.2d 854, 859 (1997).

All the words of a contract matter, and this Court must give them all due weight.  When this Court does so here, it will be duty bound to dismiss Blankenship's out-of-bounds complaint.  USA Truck should not be punished for presciently anticipating that Blankenship might go back to the well for more, despite receiving $85,000.00 to settle his dispute in the first instance, money that Blankenship has not yet returned to USA Truck.

*The release would bar Blankenship's complaint in other jurisdictions.* Though a contract may be set aside if the alleged fraud pierces the heart of the contract, the general rule does not save Blankenship—not on this record.  Here, Blankenship knowingly and transparently disclaimed any reliance on anything USA Truck allegedly communicated to Blankenship regarding what USA Truck did or did not owe Blankenship in commissions on the accounts he "brought" to USA Truck.  Blankenship agreed expressly that "no promise of inducement has been offered except as herein set forth" and that "no statement or representation [by USA Truck, Inc.] . . . concerning the nature or extent of any bonus,

11

commissions or damages, or legal liability therefore, has been made or considered by [Blankenship] in executing this Release." <u>Exhibit A at 1</u>.  There is no justifiable reliance.  There is no causation.  There can, therefore, be no fraud of any sort.  The release must stand.

Arkansas's pro-settlement public policy and the governing contract law decide this motion for USA Truck.  Though Arkansas law is not well developed regarding the effect that a specific no-reliance provision in a release has on a would-be plaintiff's attempt to defeat the release by pleading fraudulent inducement, this Court's path has been cleared by other courts.  Texas is a state that others have looked to regarding the effect that specific no-reliance clauses in releases have on a plaintiff's attempts to void a release based on fraudulent-inducement allegations.  The Supreme Court of Texas, in *Schlumberger Tech. Corp. v. Swanson*, entered judgment for Schlumberger and against Swanson, though Swanson alleged that fraud in the inducement voided a release he had given Schlumberger.  959 S.W.2d 171, 181-82 (Tex. 1997).  More specifically, the Supreme Court of Texas reversed a jury's verdict (and the Court of Appeals) and entered judgment for the party asserting a release as a defense to the claims filed against it.  *Schlumberger* informs Arkansas law on releases and counsels this Court to hold Blankenship to his word and dismiss his complaint with prejudice.

Here is the Supreme Court of Texas discussing why it upheld the release in

*Schlumberger*:

> Schlumberger argues that the Swansons' fraud claims
> are barred as a matter of law because the Swansons
> were represented by legal counsel throughout the
> arm's-length negotiations between the parties.
> Schlumberger contends that when a party is
> represented by counsel and that party agrees that, in
> signing a release, it is not relying on any statement or
> representation of the party to be released, the presence
> of independent legal advice breaks the chain of both
> reliance and causation . . . [I]f parties can refute their
> reliance, even though they were represented by counsel
> when they settled their claims, litigation never ends.
> This is so Schlumberger says, because dissatisfied
> parties could always break their settlement by claiming
> that the other party, through its misrepresentations,
> fraudulently induced them to enter into settlement or
> release.
>
> Important to Schlumberger's position is its assertion
> that it was negotiating with the Swansons at arm's
> length.  Schlumberger contends that it openly disputed
> the validity of the Swansons' interests[.]

959 S.W.2d at 175.

After discussing the parties' relationship, the Supreme Court of Texas

concluded that they were dealing at arms length.  The Court then, for purposes

of addressing the no-reliance provision of the release, assumed the truth of the

fraudulent-inducement allegations.  In the end, even that assumption did not

matter.  After discussing Texas law concerning whether fraud always defeats a

contract (such as a release), the Court stated that "a disclaimer of reliance may

conclusively negate the element of reliance, which is essential to a fraudulent inducement claim." 959 S.W.2d at 179.  The Court also wrote, "[b]ecause the parties were attempting to put an end to their deal, and had become embodied in a dispute over . . . the value of the project, we conclude that the disclaimer of reliance the Swansons gave conclusively negates the element of reliance." *Id*. at 180.  This Court should so rule here.  Blankenship's complaint and his own exhibits (including the release itself) establish an arms-length relationship and adverse interests that were fully compromised.  Blankenship agreed in writing that he fully understood what he was doing.  Nothing more is required by commonsense or law.  One cannot change his purpose to the injury of another.

Texas is not alone.  New York has recognized that "a contracting party who specifically disclaimed reliance on extra-contractual representations and indicated that it would make its own investigation of the risks involved" cannot defeat a contract with fraud claims. *Chase Manhattan Bank v. N.H. Ins. Co.*, 304 A.D.2d 423, 424 (N.Y. Sup. Ct. 2003) (citing *Schlumberger Tech. Corp. v. Swanson, supra*).  There is more.  An influential case in point decided by the highest appellate court in New York is *Dannan Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959).  There, the Court of Appeals reversed a lower appellate court and held that a specific disclaimer defeated a party's attempt to avoid contractual obligations by later alleging fraud.  The Court reasoned, rightly so, that "[i]f the

14

language here used is not sufficient to stop a party from claiming that he entered the contract because of fraudulent representations, then no language can accomplish that purpose.  To hold otherwise would be to say that it is impossible for two businesses dealing at arms length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact."  157 N.E.2d at 604.

It is true that not all states have gone this way.  *E.g.*, *Snyder v. Era*, 992 P.2d 1079 (Wyo. 1999).  But the leading commercial states, and other jurisdictions too, apply the rule USA Truck asks this Court to apply in this case.  The better rule of law is that commercial men, women, and companies should be allowed to settle their disputes as they decide it best to do in their particular situations.

Georgia recognizes the legal effect of specific "no reliance on representations" clauses.  *Kinard v. Worldcom, Inc.*, 536 S.E.2d 536, 538-40 (Ga. App. 2000).*  As USA Truck discusses more below, Pennsylvania upholds no-reliance disclaimer (and integration) clauses that are tailored to cover particular disputes.  The same holds true for Rhode Island.  *La Fazia v. Howe*, 575 A.2d 182, 186 (R.I. 1990).  And Maryland (by implication) recognizes that a *specific disclaimer* can defeat a party's attempt to defeat a contract by later claiming a

---

* "The trial court also found that the release provision itself . . . the existence of a merger clause and a no reliance on representations clause demonstrate unquestionably that Kinard's claim was released."  *Kinard*, 536 S.E.2d at 540 n.1.

fraud.  *See Greenfield v. Heckenbach*, 797 A.2d 63 (Md. Ct. Spec. App. 2002) cert.

denied 805 A.2d 266 (2002).

The rule requiring good-faith in contractual transactions is not offended

when parties expressly agree among themselves that they are not relying on the

representations that someone later claims to be fraudulent.  The wary do not

need the same protections as the unwary.

Speaking of good faith, this Court should not permit Blankenship to effect

a reverse fraud.  "[Blankenship] made a representation in the contract that [he]

was not relying on specific representations not embodied in the contract, while,

[he] now asserts, [he] was in fact relying on such oral representations.

[Blankenship] admits then that [he] is guilty of deliberately misrepresenting to

[USA Truck] [his] true intention."  *Dannan*, 157 N.E.2d at 600.  Releases

specifically tailored to avert would-be plaintiffs from manipulating fraud law for

their own selfish, hindsight-powered ends (as Blankenship tries to do) must be

given effect or they are legally impotent in a material respect.  Parties like

Blankenship could simply raise fraud, get the litigation machine running, and

thereby pressure a party, who had previously bargained and settled for sum X,

to put more money on the table.  The specter of litigation is a powerful force that

can be used to ill effects.  The better rule of law recognizes that such tactics are

unjust, wasteful, and otherwise imprudent.

Federal courts have also agreed that would-be plaintiffs should not be allowed to defeat a release using fraud allegations when the release specifically states that he or she has not relied on the representations later complained of. This is right and proper; Blankenship must be compelled to take responsibility for his actions.  The United States Court of Appeals for the Eighth Circuit has affirmed an Arkansas-based District Court's dismissal of a complaint based on a defendant's Rule 12(b)(6) motion.  The defendant's argument for a dismissal was that the plaintiff's common-law fraud claim "fail[ed] because it lack[ed] the crucial element of justifiable reliance" given some language in a contract that the parties had made.  *First Fin. Federal Sav. & Loan Ass'n v. E.F. Hutton Mortgage Corp.*, 834 F.2d 685, 686-87 (8th Cir. 1987).  Applying New York law, the Eighth Circuit wrote that the District Court correctly dismissed the fraud claim based on a "as is" clause and that "First Financial was not relying upon any representations made by anyone regarding the quality of the mortgages."  *Id*. at 686.  The Eighth Circuit concluded its analysis by holding that because the "specific disclaimer of reliance in the mortgage purchase agreement negates any claim of reasonable reliance found in First Financial's complaint . . . First Financial has not stated a cause of action for fraud."  *Id*. at 687.  This is precisely USA Truck's argument.  In fact, the disclaimer language the Eighth Circuit found

to be specific enough in *E.F. Hutton* is more general than the language in the release at issue here.

The United States Court of Appeals for the Fifth Circuit likewise got it right when it declared, "a fraud claim can be negated where a merger clause evinces a party's clear and unequivocal expression of intent to disclaim reliance on specific representations." *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003). The Court held that a merger clause stating that the underlying contract "supercede[d] all existing agreements between [the parties], whether oral or written, with respect to the subject matter herself" vaporized a fraud-in-the-inducement claim based on representations of future business expansion. *Id*. at 571.

The United States Court of Appeals for the Third Circuit has also recognized that a party can be precluded from defeating an integrated contract by arguing fraudulent inducement. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1299-1302 (3d Cir. 1996) (Pennsylvania law). More specifically, the Court rejected as "meritless" the argument that "the Supreme Court of Pennsylvania has not expressly rejected fraud in the inducement as an exception to the parol evidence rule." *Id*. at 1300. Thus, the *Dayhoff* Court held that "because the plain terms of section 14.3 cannot be altered by Dayhoff's factual claims of fraud in the inducement, *even if Dayhoff's assertions are true*, we agree with the holding of the

18

district court that the termination provision . . . is binding upon the parties." *Id.* at 1300 (emphasis added); *see also Sunquest Info. Sys. Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp. 2d 644, 654 (W.D. Penn. 1999) (merger clause bars plaintiff from "successfully arguing fraud in the inducement because its 'claims relate[d] to subjects that were specifically addressed in the written contract.'") (quoting *HCB Contrs. v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279 (Pa. 1995)).

In 2005, then-Circuit Judge Samuel Alito, Jr., writing for the Third Circuit, addressed whether Royal Indemnity Company could defeat contracts "to insure the repayment of principal and interest on several hundred million dollars of student loans," under Delaware law. *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 207 (3d Cir. 2005). In essence, Wells Fargo and MBIA Insurance Corporation sued Royal in a Delaware-based federal District Court. Wells Fargo and MBIA "alleged that Royal had wrongfully repudiated the trusts' eight policies" for various reasons. "Royal defended on the ground that SFC's fraudulent inducement entitled it to recission. The beneficiaries countered that the policies unambiguously waived this defense. In separate opinions, the district court entered summary judgment for the beneficiaries. It found that the ten policies unambiguously waived fraud in the inducement[.]" *Id.* at 209.

On review, the Court affirmed the summary judgments. In doing so, the Court rejected Royal's argument that triable issues existed on fraudulent

inducement.  It reasoned that "Royal cannot possibly claim that its reliance on those representations was reasonable when it waived all defenses based on reasonable reliance."  *Id*. at 211-12.  After a detailed discussion, the Court held that "an agreement may foreclose a fraud defense not only by waiving 'fraud' but also by setting forth terms clearly inconsistent with reasonable reliance on extracontractual representations."  *Id*. at 213.  This is just what Blankenship did years ago.  He signed a clear contract whose terms are 180° to the contrary of any reasonable-reliance argument Blankenship may make.  Consequently, this Court should tell Blankenship that he must now respect the parties' prior decision to settle their commission dispute—a settlement that USA Truck paid $85,000.00 to make.

The *MBIA* Court's decision was based significantly on the Delaware Chancery Court's opinion in *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382.  Though unpublished, the Third Circuit found that *Progressive*'s "persuasive reasoning provides a good model for the Delaware Supreme Court's own decision in this area."  *MBIA*, 426 F.3d at 216.  Below is some language from the Delaware Court's opinion, which the Third Circuit found to insulate contracts against fraud claims when specific no-reliance (or no-representations) clauses are included:

> If adopted as law, Progressive's argument would
> impede commerce.  It is not efficient for negotiators to

identify all the material issues that are not part of the
foundation of their relationship, and to list them in a
contractual schedule.  Indeed, that exercise would be
wasteful and silly as the integration clause in the
License Agreement shows.  By simple and
unambiguous means, the parties to that Agreement
identified all the representations and statements that
could not have induced the execution of the Agreement:
all representations and statements not included in the
text of the Agreement itself.

*Id*. at 216 (quoting *Progressive*, 2002 WL 1558382, at *10).  While further
addressing this commonsense approach (which also is a less paternalistic and
intrusive commercial policy), Circuit Judge Alito reasoned that "[g]iven the
potential for misrepresentation from each side of the agreement, the safer route is
to leave parties that can protect themselves to their own devices, enforcing the
agreement they actually fashion."  The laudable effect of doing so, the Court
wrote, "will make for less prolix disclaimers and reduce the likelihood that an
intended allocation of the risk of fraud will be frustrated by an omission from a
long and tedious list of representations."  *MBIA*, 426 F.3d at 218.

The United States Court of Appeals for the Second Circuit has also decided
that specific no-reliance clauses can defeat fraud charges.  For example, in
*Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315-16 (2d Cir. 1993), the
Court discussed New York law regarding when a fraudulent-inducement claim
will be barred by a contract provision.  The matter could not be more simple or
more fair when a release such as the one Blankenship signed is at issue:

21

"[P]laintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded.  Such a specific disclaimer destroys the allegations in the plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations[.]"  *Id*. at 315 (quoting *Dannan Realty Corp. v. Harris*, 157 N.E.2d at 599).  This Court should also hold that the negotiated release in this case destroys Blankenship's fraud-based allegations.  Having no good legal reason to set aside the release, this Court should apply it and dismiss this case with prejudice.

In sum, the following rule of law has been developed and honed by state and federal courts across this country:  when a release specifically states that there are no representations being relied on regarding the soul of the subject matter being settled and released, then a subsequent fraudulent-inducement allegation cannot be raised to defeat the release.  This rule makes perfect sense, and it can be easily and fairly applied here.  The rule also respects Arkansas's pro-settlement law and its contract law writ large.

*The release effected an accord and satisfaction under Arkansas law.*  When Blankenship signed the release and accepted $85,000.00 from USA Truck to settle all potential claims, Blankenship made a textbook accord and satisfaction under Arkansas law.  "An accord and satisfaction is a settlement in which one party

agrees to pay and the other to receive different consideration or a sum less than the amount to which the latter believes he is entitled." *Housley v. Hensley*, 100 Ark. App. 118, __, 2007 WL 2964335 *4 (citation omitted). Thus, Blankenship is precluded from receiving relief on his complaint, which prays for one-million dollars in compensatory damages alone. (Doc. 1). Here are the specific elements of the defense in Arkansas, put in this case's terms:

> ➢ Is the subject matter of the release proper? In other words, could Blankenship and USA Truck settle a dispute about commission payments?

> ➢ Are Blankenship and USA Truck competent parties?

> ➢ Did Blankenship and USA Truck mutually assent to settle on the terms placed into the release?

> ➢ Did the $85,000.00 that USA Truck paid to Blankenship suffice as consideration for the release?

*Id.*

To ask these questions (given USA Truck's foregoing discussion) is to answer them. Blankenship's complaint—when considered with the incorporated and fully integrated release—answers every question in the affirmative. Thus, the release triggers the defense of accord and satisfaction. The defense typically presents an issue of fact, but that's not true here. After all, "[t]he validity of an accord and satisfaction is dependent upon the same basic factors and principles that govern contracts generally[.]" *Housley*, 2007 WL 2964335, at *4. And USA

Truck need not repeat here why Arkansas contract law, when married to the face of the complaint and its incorporated exhibits, provides this Court with one reasonable conclusion regarding USA Truck's request for a dismissal.

   ***Blankenship waived the right to complain by signing the release.***  The Arkansas Supreme Court has stated that "to invoke the rule of waiver it is essential to show the defrauded party intentionally condoned the fraud, affirmed the contract, and abandoned all right to recover."  *Sellers v. West-Ark. Constr. Co.*, 283 Ark. 341, 343, 676 S.W.2d 726, 728 (1984).  Blankenship waived any right to recover, for any alleged reason, when he signed the release.  *Sellers* is instructive here because the waiver issue there turned on the fact that the alleged fraud occurred after the receipt of a final payment.  This case is different because Blankenship specifically waived all alleged representations as he signed the solemn instrument, which specifically disclaimed any inducement or reliance concerning the nature and extent of any losses, commissions or damages, or legal liability.

## II.  CONCLUSION

It is understatement, not hyperbole, that Arkansas's public policy favoring settlements—and its strong freedom-to-contract policy—will be defeated if this Court blesses Blankenship's fickleness, which is manifest by his attempt to renege on his contractual promise to release USA Truck from all potential legal liability concerning the commission dispute Blankenship now complains about. Nor is it hyperbole to state that many courts would reject Blankenship's attempt to commit a reverse fraud on USA Truck, Inc.  Former Chief Judge Franklin Waters has the last word:  where, as here, "plaintiffs knew the character of the release and understood the consequences of executing it," and where "[t]he release is clear, plain, simple, and unambiguous in all respects," then even "startlingly clear hindsight will not render the acts of one laboring under erroneous foresight void ab initio."  *Fitzwater v. Lambert & Barr, Inc.*, 539 F.Supp. 282, 291 (W.D. Ark. 1982).

This Court should spare USA Truck, Inc. from further expensive and time-consuming efforts to hold Blankenship to his binding promise to release USA Truck, Inc. from all legal action touching the commission-related dispute that the parties compromised for $85,000.00 back in March 2006.  It can do so by dismissing the complaint with prejudice forthwith.

Respectfully submitted,

Barry Deacon (75030)
J. Barrett Deacon (2001201)
Brandon J. Harrison (2002103)
BARRETT & DEACON
A Professional Association
Post Office Box 1700
Jonesboro, Arkansas  72403
Telephone:  (870) 931-1700


By:   /s/   Barry Deacon
Attorneys for Defendant,
USA Truck, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of August, 2008, I presented the foregoing document to the Clerk of Court for filing and uploading to the CM/ECF system, which shall send notification of such filing to the following:

Kenneth S. Hixson
Attorney at Law
HIXSON & DANIELS, PLLC
133 West Sunbridge Drive
Fayetteville, AR  72703

/s/   Brandon J. Harrison
Attorney Bar No. (2002103)
Attorney for Defendant,
USA Truck, Inc.

BARRETT & DEACON, P.A.
P.O. Box 1700
Jonesboro, AR  72403
Telephone:  (870) 931-1700
Facsimile:   (870) 931-1800
Attorney e-mail address:
bharrison@barrettdeacon.com